UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
J.D WORKFORCE, INC.,

**Case No.: 1:22-cv-7930**

Plaintiff,

**COMPLAINT**

-against-

MOHAMED J. GAFOOR and ABC COMPANY,

Defendants.

----------------------------------------------------------------X

Plaintiff J.D Workforce, Inc. ("JD Workforce" or "Plaintiff"), by its attorneys Milman Labuda Law Group PLLC, as and for its Complaint against Defendants Mohamed J. Gafoor (hereinafter "Gafoor" or the "Individual Defendant"), and ABC Company (hereinafter "ABC Company" or the "Corporate Defendant") (the Individual Defendant and the Corporate Defendants collectively hereinafter the "Defendants"), hereby alleges as follows:

## NATURE OF THE CASE

1.      This is an action for damages and injunctive relief related to Defendants' intentional misdirection of Plaintiff's employees through lies and threats and the misappropriation of Plaintiff's confidential information and trade secrets resulting in Defendants': (i) violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (ii) misappropriation of trade secrets under New York common law; (iii) unfair competition under New York common law; (iv) tortious interference with contractual relations, business relations, and prospective economic advantage; (v) unjust enrichment; (vi) breach of contract; (vii) conversion; (viii) violation of the faithless servant doctrine; (ix) breach of duty of loyalty; and (x) breach of fiduciary duty.

2.      Defendants' diabolical scheme to leech off of Plaintiff's business causing Plaintiff's decimation must be stopped.

3.      In addition, Defendants must pay for damages for the harm they have caused to Plaintiff's business.

## PARTIES

4.      JD Workforce was at all times relevant and remains a corporation duly incorporated under the laws of the State of New York with its principal place of business in Queens County, New York.

5.      Hamwattie Bissoon ("Mrs. Bissoon") is JD Workforce's sole shareholder & President.

6.      Ramnarine Dabie ("Mr. Dabie") is an employee of JD Workforce with managerial authority.

7.      Gafoor was formerly employed by JD Workforce, who, upon information and belief, resides in Queens County, New York.

8.      Upon information and belief, ABC Company is an assumed name for Defendant Gafoor's sole proprietorship.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 given that Plaintiff pursues claims under the DTSA, a federal law.

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims against Defendants because they are part of the same case or controversy and arise under a common nucleus of operative facts.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and each of the Defendants reside in this district.

## FACTS

12.     JD Workforce was duly incorporated in August 2018.

13.     Since its incorporation, JD Workforce has operated in the highly competitive field of temporary staffing.  Mrs. Bissoon and Mr. Dabie have been involved in the temporary staffing business since in or about 2004.

14.     For nearly two decades, Mrs. Bissoon and Mr. Dabie have built relationships in the temporary staffing world and, in 2018, decided to start and operate a business together.

15.     JD Workforce provides staffing solutions to large employers who need many employees to perform work in various industries.

16.     Among other things, JD Workforce distinguishes itself from the competition by the relationships it has built and the accompanying services it provides to its customers on top of staffing solutions.  For example, JD Workforce provides transportation services to its employees to get them to its customers' location every day.

17.     Gafoor was employed by JD Workforce as a supervisor and manager since its inception and was thus a key employee.  As such, he owed JD Workforce a duty of loyalty and was entrusted with the confidential trade secrets of JD Workforce.

18.     In April 2020, Gafoor executed an agreement with Plaintiff wherein he agreed (i) to use his best efforts to maintain the confidentiality of all confidential information he acquired because of his employment and similarly agreed not to use any such information for his personal use without consent from JD Workforce; (ii) not to remove any company materials during and after his employment; (iii) not to compete with JD Workforce nor to solicit any of JD Workforce's customers or employees, both during his employment and for a period of one year thereafter; and (iv) to devote his full time and attention to the performance of his duties (the "Agreement").

19.     Under the agreement, confidential information was defined to include, without limitation, any information JD Workforce treats as confidential, any information such as customer lists, compensation records and plans, business procedures, finances, customer identities, the terms of contracts or agreements with customers, etc.

20.     In October 2022, JD Workforce discovered that its vans which transport temporary workers to one of its customers in Pennsylvania did not leave with JD Workforce's sixty (60) temporary employees that were assigned to that particular customer.

21.     Gafoor failed to return calls from JD Workforce inquiring into what transpired.

22.     Upon investigation, JD Workforce learned that Gafoor had transported all sixty (60) workers by means of his own transportation.

23.     When Mr. Dabie spoke to a driver about why he did not drive the employees, the driver told him that Gafoor instructed him to not drive that day.

24.     This was puzzling because sixty (60) workers were ordered by Plaintiff's customer to arrive in Pennsylvania.

25.     That same day, Mrs. Bissoon and Mr. Dabie went to the customer in Pennsylvania to figure out why their sixty (60) temporary employees did not arrive as scheduled.

26.     There, they learned that Gafoor informed all of Plaintiff's temporary employees that they no longer work for JD Workforce, that it closed, and that they work for him now.

27.     Upon further investigation, Plaintiff learned that while Gafoor was still employed by JD Workforce, Gafoor paid approximately eight to ten temporary employees in cash and he was paid directly by JD Workforce's customers for temporary staffing services provided by JD Workforce.

28.     Gafoor engaged in this conduct to deprive JD Workforce of the contractually agreed-upon benefit it expected to receive from its customers and to line his own pockets.

29.     Discovery will likely uncover that Gafoor has engaged in such conduct from the beginning of his employment and with other customers of JD Workforce.

30.     Gafoor's conduct constitutes disloyal acts in violation of Gafoor's duty of loyalty to JD Workforce, a violation of the DTSA and related state law common claims for misappropriation of trade secrets and unfair competition, as well as a breach of Gafoor's obligations under the agreement.

31.     Once Plaintiff learned that Gafoor told its employees they no longer work with JD Workforce, Mr. Dabie and Mrs. Bissoon confronted Gafoor, who admitted to them that his move was "in the making" for some time, claimed entitlement to Plaintiff's employees, and laughed in the faces of Mr. Dabie and Mrs. Bissoon.

32.     Gafoor went so far as to deny Mr. Dabie and Mrs. Bissoon the ability to speak to their own employees!

33.     When the employees learned of Gafoor's deceit, approximately half returned to their employment with JD Workforce.  However, about thirty-five (35) employees remain with Gafoor and the new company he built on his theft of confidential information he obtained from Plaintiff and in violation of the agreement.

34.     Plaintiff's business model, its customer lists, contact information and preferences, information related to its revenues and profit margins, and the related information Gafoor obtained during his employment with Plaintiff are confidential and proprietary, and took great costs and efforts to create, including years of developing relationships with customers long before Gafoor entered the fray in the temporary staffing market.

35.     Plaintiff, by and through Mrs. Bissoon and Mr. Dabie, went through painstaking efforts, time, and money to build their business to what it is today.

36.     Plaintiff has spent the last four years marketing its services and cultivating relationships with its customers and contacts in the industry, many of whom were customers of JD Workforce from its inception.  Moreover, Gafoor learned of Plaintiff's customer's preferences while employed at JD Workforce.

37.     Plaintiff's carefully curated customer preferences and customer relations are vital to its business; possession of that information, which Gafoor misappropriated in contravention of his agreement, provided Plaintiff a unique competitive advantage in the temporary staffing industry, a competitive advantage it has been stripped of by Gafoor's unlawful acts.

38.     Plaintiff took reasonable measures to keep its confidential information secret, including restricting access of this information only to managers such as Gafoor, and requiring such managers to maintain confidentiality of this information by executing an agreement.

39.     The confidential information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means from others who could otherwise obtain economic value from the disclosure or use of the information.

40.     This confidential information is related to services used in and intended for use in interstate or foreign commerce because Plaintiff has its temporary employees travel out of the State of New York to the States of New Jersey and Pennsylvania in the regular course of its business.

41.     Gafoor was in a position of trust at JD Workforce and was required, under common law, and as a manager under contractual confidentiality obligations, to provide his utmost duty of loyalty to his employer, JD Workforce.

42.     Gafoor's acts, outlined *supra*, are in violation of his duty of loyalty, his fiduciary duty, and Defendants' actions constitute, among other things, theft of trade secrets and unfair competition.

43.     Moreover, Defendants knew and had reason to know that the trade secrets and confidential information they obtained – including customer lists, financial information, and details about customers – were acquired by improper means.

44.     This is evidenced by Gafoor's response when Mr. Dabie and Mrs. Bissoon confronted him about his disloyalty.

45.     Gafoor bribed Plaintiff's employees with cash payments in order to line his own pockets and deprive Plaintiff of its contractually agreed-upon benefit with its customers.

46.     The unauthorized acts of Gafoor in using critical confidential information to jumpstart his own competitor entity is unlawful.

47.     There was no other way to obtain this information and Defendants used it as a "roadmap" and "step by step manual" to establish their operations to improperly compete with Plaintiff.

48.     Plaintiff's trade secrets and confidential information that Gafoor misappropriated provided Defendants with the ability to duplicate operational, service, and development techniques that JD Workforce has spent years, decades even, establishing; meanwhile, Defendants gained access to information that they would have no other way of obtaining.

49.     Defendants misappropriated such confidential and trade secret information by engaging in theft and bribery; no permission was given to Gafoor to utilize Plaintiff's customer lists, customer preferences, financial information, and details about JD Workforce's customers for any purpose except for the benefit of JD Workforce.

50.     It is obvious from Defendants' brazen tactics that they are actively engaged in a scheme to plunder and destroy the company Mrs. Bissoon and Mr. Dabie spent years building.

51.     Upon information and belief, a significant number of Plaintiff's customers have been solicited by Defendants using Plaintiff's trade secrets and confidential information.

52.     Immediate injunctive relief and a permanent injunction is necessary to prevent Defendants from destroying the customer relationships and goodwill that JD Workforce has spent years building, from profiting on a business which they stole from JD Workforce, and causing further imminent and irreparable financial harm to JD Workforce.

53.     In addition to securing the return of its misappropriated information to it by Defendants and enjoining them from engaging in any further unlawful conduct, it is essential that JD Workforce be permitted to forensically examine the Defendants' email accounts, computers, cellular phones, and any other electronic devices or cloud storage accounts, to determine the exact nature and extent of Defendants' unlawful scheme to steal JD Workforce's customers.

### AS AND FOR ITS FIRST CAUSE OF ACTION
**(Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 – Both Defendants)**

54.     JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

55.     Defendants' actions, as set forth herein, constitute misappropriation under the DTSA, 18 U.S.C. § 1836.

56.     Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its customers, contact information, and all details related to customers, including *inter alia*, their preferences and pricing, profit margins, in addition to private and confidential financial information, as well as Plaintiff's forms and contracts.

57.     JD Workforce made and makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to managers and requiring managers to sign confidentiality agreements.

58.      Defendants were prohibited from utilizing confidential information and trade secrets of JD Workforce without its consent.

59.     The trade secret information belonging to Plaintiff that Defendants possess derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

60.     Indeed, Defendants utilized this very information as a road map to open a competing business and unfairly competed against JD Workforce in dastardly fashion.

61.     Defendants knew that this information contained trade secrets belonging to JD Workforce.

62.      Defendants have no right to retain or use any of JD Workforce's trade secrets or other confidential and proprietary information due to their illegal conduct.

63.     Upon information and belief, Defendants are retaining and using that information to compete with JD Workforce; JD Workforce did not consent to Defendants' use of the information as set forth above.

64.     At all relevant times, Defendants knew that the information obtained by them contained Plaintiff's proprietary trade secrets that they had no right to receive and could not receive absent the improper acts of Gafoor.  Defendants' conduct thus constitutes knowing, willful, and  malicious misappropriation.

65.     Defendants have used Plaintiff's trade secrets to sell, through interstate commerce, services that compete with the services that Plaintiff markets, causing substantial loss of sales to Plaintiff and damage to its relationships with its clients.

66.     Defendants have wrongfully acquired and used Plaintiff's trade secrets and continue to do so, without the express or implied consent of Plaintiff, for Defendants' own benefit and the benefit of others.

67.     The public policy in favor of protecting Plaintiff's interest in maintaining its trade secrets outweighs any interest Defendants could have in using Plaintiff's trade secrets.

68.     As a direct and proximate result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage including, without limitation, the misappropriation of its trade secrets and loss of its brand recognition and goodwill with its clients, and will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their continued misappropriation of trade secrets.

### AS AND FOR A SECOND CAUSE OF ACTION
**Injunctive Relief under the DTSA (18 U.S.C. § 1836, *et seq.* – Both Defendants)**

69.     JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

70.     JD Workforce operates its business in interstate commerce in New York, New Jersey, and Pennsylvania, and the trade secrets misappropriated by Defendants are related to, and intended for use in, interstate commerce.

71.     As set forth above, Defendants improperly acquired Plaintiff's trade secrets, including information regarding Plaintiff's business, operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing

strategies, and other confidential business and/or financial information that was secret, valuable in the industry, and had not been disclosed to anyone except managers who contractually agreed to keep this information confidential.

72.     The aforementioned information qualifies as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839(3).

73.     The misappropriated documents concern Plaintiff's operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing strategies, including financial, business, and economic information, plans, methods, techniques, procedures, formulas and processes.

74.     Furthermore, Plaintiff has taken reasonable measures to keep such information secret by, among other things, limiting highly sensitive information to managers who sign confidentiality agreements.

75.     The trade secrets misappropriated by Defendants include the trade secrets which required substantial resources, time and investment by Plaintiff to create and/or develop, and derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as Plaintiff's competitors.

76.     Defendants' misappropriation of Plaintiff's trade secrets has caused it to suffer harm, including but not limited to the loss of clients, loss of reputation and customer goodwill, and loss of the confidentiality of, and investment in, its trade secrets.

77.     This harm cannot be adequately remedied at law and requires permanent injunctive relief.  Plaintiff will suffer irreparable and imminent harm in the absence of a permanent injunction; Defendants' continued misappropriation of Plaintiff's trade secrets and

failure to return Plaintiff's documents containing Trade Secrets, including Plaintiff's top revenue clients will cause Plaintiff further loss of clients, customers, accounts and/or market share.

78.     This imminent injury is neither remote nor speculative, because Plaintiff has already been harmed in precisely this manner by Defendants' misappropriation and use thereof, and will continue to be irreparably harmed in the absence of a permanent injunction.

79.     Defendants will not suffer harm from the rightful return of Plaintiff's proprietary information and trade secrets, and will not be prevented from conducting their ordinary business by lawful means.

80.     Defendants will merely be prevented from continuing to gain an unfair and unlawful advantage at Plaintiff's expense.  The ongoing, continuing and future harm to Plaintiff cannot be adequately remedied at law and requires permanent injunctive relief.

81.     The public interest would not be disserved by the issuance of an injunction preventing Defendants from misappropriating Plaintiff's Trade Secrets.

82.     Accordingly, Plaintiff is entitled to an injunction, pursuant to 18 U.S.C. 1836(b)(3)(A), enjoining Defendants from continuing to use Plaintiff's trade secrets, in order to prevent continued actual and threatened misappropriation of Plaintiff's trade secrets, and requiring Defendants to return and/or destroy the trade secrets improperly accessed and retained by Defendants, pursuant to 18 U.S.C. 1836(b)(3)(A)(ii).

### AS AND FOR A THIRD CAUSE OF ACTION
**(Misappropriation – Both Defendants)**

83.     JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

84.     Defendants' actions, as set forth herein, constitutes misappropriation under New York law.

85.     Defendants currently possess information belonging to and used in the operation of JD Workforce's business, which information constitutes confidential, proprietary and trade secret information under New York law.

86.     Such information was developed by JD Workforce through great effort and expense, in terms of manpower, time, and costs, and is extremely valuable to JD Workforce, as it is crucial to the operation of its business, cannot  be easily acquired or duplicated by others, and, if made available to others, would enable competition with JD Workforce to its detriment.

87.     JD Workforce makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to those who, like Gafoor, was a manager of JD Workforce under an agreement to keep its trade secrets confidential.

88.     Upon information and belief, Defendants knowingly and improperly obtained and used such trade secrets and confidential information for their own benefit, violating the agreement.

89.     The improperly retained information constitute trade secrets and Defendants' actions pose a real and actualized risk that they will and have misappropriated these secrets by using the information to their advantage or for their own personal economic gain and with the willful and malicious intent to injure JD Workforce's business.

90.     As a result, JD Workforce has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and punitive damages in anamount to be proven at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Unfair Competition – Both Defendants)

91.     JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

92.     Through Defendants' misappropriation of Plaintiff's confidential trade secrets, Defendants have stolen customers from JD Workforce.

93.     As a result of Defendants' use of the trade secrets they bribed employees to obtain a competitive advantage against Plaintiff, and as such, Defendants have caused economic damages to JD Workforce along with diminishing its goodwill.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Tortious Interference – Both Defendants)

94.     JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

95.     Plaintiff has entered into valid written agreements with its clients, customers, and employees concerning the provision of temporary staffing solutions.

96.     Defendants were at all relevant times aware of these agreements between Plaintiff and its clients, customers, and employees.

97.     Defendants intentionally provided financial incentives in the form of cash payments to Plaintiff's employees to induce them to work for Defendants, and – in turn – induce Plaintiff's customers to work with Defendants instead of Plaintiff in violation of the law.

98.     Defendants' conduct in paying Plaintiff's employees in cash is a crime, codified in New York's Penal Law at §§ 180.03 and 180.00 as Commercial bribery.

99.     Defendants further induced Plaintiff's employees to work for Defendants rather than Plaintiff with these cash payments.

100.    Defendants knew that it was illegal to engage in bribery to solicit Plaintiff's employees; Defendants' conduct has caused Plaintiff to lose sales as well as cause injury to Plaintiff's brand and reputation with its clients.

101.     As a consequence of Defendants' acts to steal clients, customers, and employees of JD Workforce, it has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

102.     Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive damages and/or exemplary damages.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Unjust Enrichment – Both Defendants)**

103.     JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

104.     Plaintiff has invested substantial time, money, and effort into developing and maintaining its confidential information and trade secrets in promoting and selling its temporary staffing services, including its customer & client lists, as well as the forms and contracts Plaintiff has prepared for its customers.

105.     Defendants have used and continue to use Plaintiff's confidential information to compete with Plaintiff and funnel Plaintiff's business opportunities away from Plaintiff to Defendants.

106.     As a result of Defendants' use of Plaintiff's confidential information and trade secrets, Defendants have all been enriched at Plaintiff's expense by, among other things, receiving substantial revenues from sales of services that compete with Plaintiff's services without bearing the expense and risk of identifying the services and developing the clients, customers, marketing plans, and materials necessary to achieve the sales.

107.     As a consequence of Defendants' acts to steal customers of JD Workforce, JD Workforce has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (Breach of Contract – Individual Defendant)

108.     JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

109.     Plaintiff and Gafoor entered into an Employee Confidentiality Agreement, which is a valid and existing agreement, in which Gafoor agreed not to compete directly or indirectly with Plaintiff for a period of one year and where Gafoor agreed to not solicit Plaintiff's clients, customers, or employees for one (1) year.  Plaintiff fully performed under the agreement by employing and compensating Gafoor for his work as a manager.

110.     However, during and after his employment ended, Gafoor, both individually and by and through ABC Company, breached the agreement by operating a competing business which was formed using Plaintiff's confidential information and trade secrets and by soliciting JD Workforce's customers to cease their relationships with JD Workforce and soliciting JD Workforce's employees to terminate their employment with JD Workforce.

111.     As a result of the Defendants' combined, concerted, and continued efforts, Plaintiff was, is, and continues to be damaged for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Conversion – All Defendants)

112.    JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

113.    Plaintiff has a possessory right and legal ownership to the confidential information and trade secrets referenced herein.

114.    Defendants exercised unauthorized dominion over Plaintiff's confidential information and trade secrets.

115.    Defendants willfully exercised unauthorized dominion over Plaintiff's confidential information and trade secrets to the detriment of Plaintiff.

116.    Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets was and is to the exclusion of Plaintiff's rights.

117.    Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets constitutes conversion.

118.    Defendants have thus committed the tort of conversion under New York common law.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Breach of Fiduciary Duty – Individual Defendant)

119.    JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

120.    Gafoor was employed by Plaintiff in a position of trust and confidence.

121.    As a manager of Plaintiff, Gafoor owed Plaintiff a fiduciary duty of loyalty and honesty.

122. By virtue of these duties, Gafoor was prohibited from acting in a disloyal manner, or in any way inconsistent with that fiduciary relationship.

123. Gafoor's aforementioned conduct of providing temporary staffing services for JD Workforce's clients utilizing JD Workforce's employees, to whom Gafoor paid in cash, while he worked for Plaintiff using Plaintiff's confidential information constitutes a breach of the fiduciary duty owed to Plaintiff.

124. This is especially the case where the money Gafoor received for the employees he provided and paid in cash should have been paid to JD Workforce, not Gafoor.

125. As a consequence of Gafoor's foregoing intentional breach of his fiduciary duties to Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including – but not limited to – financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Breach of Duty of Loyalty – Individual Defendant)

126. JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

127. Gafoor was employed by Plaintiff in a position of trust and confidence.

128. As an employee of Plaintiff, Gafoor owed Plaintiff a duty of loyalty and honesty.

129. By virtue of these duties, Gafoor was prohibited from acting in a disloyal manner or in any way inconsistent with the employment relationship.

130. Gafoor's aforementioned conduct of providing temporary staffing services for JD Workforce's clients utilizing JD Workforce's employees, to whom Gafoor paid in cash, while he worked for Plaintiff using Plaintiff's confidential information constitutes a breach of the fiduciary duty owed to Plaintiff.

131.   This is especially the case where the money Gafoor received for the employees he provided and paid in cash should have been paid to JD Workforce, not Gafoor.

132.   As a consequence of Gafoor's forgoing intentional breach of his duty of loyalty to Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
### (Violation of Faithless Servant Doctrine – Individual Defendant)

133.   JD Workforce incorporates by reference each of the foregoing allegations as though fully set forth herein.

134.   Gafoor was employed by Plaintiff in a position of trust and confidence.

135.   As an employee of Plaintiff, Gafoor owed Plaintiff a duty of loyalty, honesty, and fidelity.

136.   By virtue of these duties, Gafoor was prohibited from acting in a disloyal manner or in any way inconsistent with that trust relationship.

137.   Pursuant to the faithless servant doctrine, Gafoor was obligated to be loyal to Plaintiff and was prohibited from acting in a manner inconsistent with her agency or trust and was bound to exercise the utmost good faith and loyalty in the performance of her duties.

138.   Gafoor's aforementioned conduct of providing temporary staffing services with Plaintiff's employees, which he paid in cash, while he worked for Plaintiff using Plaintiff's confidential information constitutes a breach of the fiduciary duty owed to Plaintiff.

139.   Gafoor's activity was related to the performance of his duties.

140.   Gafoor's disloyalty permeated his services in its most material and substantial part.

141.     As a consequence of Gafoor's conduct, which constitutes a cause of action pursuant to the faithless servant doctrine, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to the return of wages, bonuses and other compensation paid to Gafoor /such that they are disgorged, financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

## DEMAND FOR JURY TRIAL

142.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, JD Workforce hereby demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor as against Defendants as follows:

a.     Compensatory damages for misappropriation of JD Workforce's goodwill, misappropriation and unfair competition, violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, tortious interference with contract, business relations, and prospective economic advantage, unjust enrichment, and civil conspiracy according to proof at trial, including but not limited to, lost profits, disgorgement of all profits and revenues received by Defendants, and – to the extent calculable – damages for reputational damage, lost customers, lost relationships, lost revenue, loss of goodwill, corrective advertising, and all other available damages;

b.     Injunctive relief restraining and enjoining Defendants from further violations of the DTSA, including the use of confidential information or trade secrets of Plaintiff, and unfairly competing with Plaintiff in any manner;

    c.    Ordering that Defendants return all of JD Workforce's confidential and proprietary information, including a forensic examination of all of Defendants' computing devices, cellular phones, and cloud storage sites;

    d.    Permanently shuttering ABC Company and prohibiting the individual defendant or his agents from engaging in any similar business, whether directly or indirectly;

    e.    Punitive and exemplary damages in an amount to be determined at trial in this case;

    f.    Interest (pre-judgment & post-judgment);

    g.    Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and other benefits received by reason of the unlawful conduct complained of herein;

    h.    Enjoining Defendants from operating their business by virtue of its illegal conduct;

    i.    Ordering that Defendants pay the costs of suit, including attorneys' fees; and

    j.    Such other and further relief as this Court deems just, equitable, and proper.

Dated: Lake Success, New York
       December 28, 2022

                        Respectfully submitted,

                        **MILMAN LABUDA LAW GROUP PLLC**

                        _____/s_____
                        Jamie S. Felsen, Esq.
                        Emanuel Kataev, Esq.
                        3000 Marcus Avenue, Suite 3W8
                        Lake Success, NY 11042-1073
                        (516) 328-8899 (office)
                        (516) 328-0082 (facsimile)
                        jamiefelsen@mllaborlaw.com
                        emanuel@mllaborlaw.com